FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF LUBBOCK, Texas, et al., Appellants,

v.

W. Sale LEWIS, Savings and Loan Commissioner of Texas, et al., Appellees.

No. 12117.

Court of Civil Appeals of Texas, Austin.

May 15, 1974.

Rehearing Denied June 5, 1974.

James A. Walters, Walters & Associates, Lubbock, for appellants.

John L. Hill, Atty. Gen., John H. Banks, Asst. Atty. Gen., Austin, Dudley D. McCalla, Heath, Davis & McCalla, Austin, for appellees.

SHANNON, Justice.

Equitable Savings Association of Fort Worth, Texas, filed an application with the Savings and Loan Commissioner ,for a branch office to be located in the vicinity of 50th Street and University Avenue in Lubbock. Three area savings and loan associations filed written protests in opposition to the branch application. After hearing, the Commissioner granted the application.

Appellants, Briercroft Savings and Loan Association of Lubbock and First Federal Savings and Loan Association of Lubbock, filed suit in the district court of Travis County to set aside the order of the Commissioner. By its judgment the trial court sustained the order of the Commissioner. We will affirm the judgment of the trial court.

In the order granting the branch application, the Commissioner set out the "underlying facts" supporting his findings. The pertinent portions of that order are set forth in the footnote.[1]

1. "The Commissioner further finds there is a public need for the proposed branch office, that the volume of business in the community in which the proposed branch office will conduct its business is such as to indicate a profitable operation to the applying association within a reasonable period of time, and that the proposed operation of the branch office applied for will not unduly harm any other association operating in the vicinity of the proposed location. In support of these findings, the Commissioner states and finds the following underlying facts:

Lubbock and Lubbock County have experienced substantial growth in recent years and the evidence indicates that such growth is continuing. The population of Lubbock increased from 71,390 in 1950 to 128,691 in 1960 and to 149,101 in 1970. The population of Lubbock County increased from 101,048 in 1950 to 156,271 in 1960 and to 179,295 in 1970. Estimates of population for the City of Lubbock and Lubbock County, as presented by the protesting associa-

tions, approximated 153,464 and 184,283, respectively, as of June of 1972.

The branch office hereby approved would be located in one of the higher income areas of Lubbock, near the intersection of 50th Street and University Avenue. 50th Street and University Avenue are major traffic arteries in Lubbock. 50th Street has experienced substantial commercial development, as shown by the branch application filed by First Federal Savings and Loan Association of Lubbock, for a branch office to be located in the southwest portion of Lubbock. The evidence shows without dispute that the trend of development in Lubbock is toward the southwest and the branch office here approved would be located in such portion of town and thus be accessible to such development. In addition to commercial development in the area, the evidence also shows that the majority of the residential construction in Lubbock in recent years has been to the west, south and southwest parts of town, and that current trends indicate that an es-

■ By several points of error appellants claim that the Commissioner's findings of public need for the branch and of no undue harm to other associations in the vicinity are not supported by substantial evidence.

At the Commissioner's hearing, Equitable Savings Association presented two witnesses in support of its branch application while the appellants produced six who testified in opposition. Equitable's witnesses were H. Earl Hall, Jr., its president,

timated 75% of new residential subdivisions are located to the southwest of the downtown area of Lubbock. The area of the proposed location also was shown to be accessible from other portions of the City of Lubbock although it obviously will serve the closely surrounding area to a greater degree. The greater community to be served by the branch office will approximate Lubbock County.

Many economic indicators of Lubbock and Lubbock County have shown good growth in recent years. The population increases have been noted above. The population per savings and loan facility in Lubbock has been declining in recent years as management of the local associations have acted to meet the needs of the savings and borrowing public for additional facilities. In addition, new banks have been chartered in Lubbock in recent years. Although protestants of the branch applied for made reference to 'water problems' stated to exist in recent years, the evidence shows increasing economic growth and addition of new financial institutions and facilities in the Lubbock area during the past ten years. Time deposits of Lubbock banks have increased from $67.5 million at the end of 1961 to $264.8 million at the end of 1971. Time deposits of individuals in six Lubbock banks increased from $104,892,000 in 1967 to $190,906,000 in 1971. Demand deposits of individuals in the same banks for the same period of time increased from $125,038,000 to $156,969,000. Time and savings deposits of individuals, partnerships and corporations in Lubbock County banks increased from $40,906,000 in 1960 to $224,096,000 in 1972. Savings of Lubbock savings and loan associations increased from $79,638,000 in 1965 to $140,788,000 in 1971. Savings of Briercroft Savings and Loan Association increased from $2,222,609 in 1963 to $25,967,081 in 1971. From the end of 1971 through June of 1972, savings deposits at Briercroft increased by $5,430,640. Savings of the other protesting association which appeared at the hearing, First Federal Savings and Loan Association of Lubbock, increased by $5,900,640 at the end of 1971 through June of 1972, from $65,176,231 to $71,076,871. The savings of Lubbock Savings and Loan Association increased from $15,700,753 in 1961 to $28,042,066 in 1971 to $31,149,252 in June of 1972. The savings of State Savings and Loan Association of Lubbock increased from $3,451,650 in 1961 to $21,602,646 in 1971, to $24,661,706 in June of 1972. These increases in savings

deposits and bank deposits have resulted from increased employment and incomes in the Lubbock area, and also from changing economic conditions. Total employment in Lubbock County increased from 63,295 in 1964 to 75,620 in 1972; during these years, non-agricultural employment increased from 57,295 to 69,630. The economy of Lubbock County is influenced by agriculture and the fine educational institution of Texas Tech University, and while the area obviously suffered from the tornado which occurred in 1970, that the economy has recovered is shown by the savings and lending figures cited above and hereafter.

The growth figures recited above compels a finding that the economy of the Lubbock area is strong. The evidence in this record also shows strong loan demand in Lubbock and Lubbock County. The branch application of First Federal states: 'For the past six years, there has been a steadily increasing demand for single family and multifamily mortgages in Lubbock.' Increasing loan demand in Lubbock County is shown by the deeds of trust filed by applicant and the Lubbock County associations during 1970, 1971 and the first six months of 1972. These records show that deeds of trust filed by such associations totalled $16,081,000 in 1970, $41,167,000 in 1971, and $35,793,000 in the first six months of 1972.

Equitable Savings and Loan Association has been active in Lubbock County since 1930 and has loaned approximately $34,000,000 in Lubbock in the past ten years. At the time of hearing Equitable Savings and Loan had approximately $23,000,000 in outstanding loan balances in the Lubbock area and approximately $138,000 in savings accounts. The budget projections presented by applicant are conservative and attainable, especially in light of applicant's past lending activities in the area, and in light of protestants' evidence indicating that a sizeable percentage of householders interviewed in the immediate vicinity of the proposed location indicated there was a need for a savings and loan branch office at 50th and University, and that a large number of such householders stated they would use a savings and loan office so located. This evidence, the growth of the existing associations noted above, and the state of the area economy preclude a finding that any existing association would be unduly harmed by operation of the branch office applied for."

and George W. Berry, its economic expert. Equitable's witnesses testified to facts concerning the economic condition in Lubbock. In this connection, reference is made to that part of the Commissioner's order in the footnote which sets out much of Equitable's evidence. No purpose would be served by restating that proof in this opinion.

Appellants' witnesses were Laura Louise Lucksinger, a professor of Marketing at Texas Tech University; Harold Chapman, a realtor; Stanley Allen Self, a professor in the business school at Texas Christian University; Lester Sartorius, a professor in the business school at Georgia State University; Jerome M. Gutheinz, an employee of Briercroft; and Claude Riley Meadows, president of Briercroft.

The testimony of appellants' witnesses tended to show that there was no public need for the proposed branch, and that its operation would unduly harm their functioning. For example, Meadows testified that the competition in Lubbock is "very excessive and very intense" and that the existing associations experience difficulty in "holding their own." Despite Meadows' augury of imminent evils, his association has "held its own," and, in addition, has experienced a healthy growth since its inception. Its savings increased from $2,222,609 in 1963 to $25,967,081 in 1971. From the end of 1971 through June of 1972 its savings deposits increased by $5,430,640.

Appellants also stress that Lubbock Savings and Loan Association has experienced a decrease in the undivided profits account. This was so even though the savings accounts of that association had increased from $15,700,753 in 1961 to $31,149,252 by June of 1972. It is of some moment, we think, that Lubbock Savings and Loan Association did not regard the possibility of harm to it by the establishment of the branch to be sufficiently grave so as to warrant an appearance in protest of the application.

Appellant First Federal's position that the Lubbock area has reached a "saturation" point with respect to savings institutions is somewhat less convincing in view of the fact that it filed for a branch office on 50th Street about two miles from Equitable's proposed location about a month *after* it learned of Equitable's branch application. In its application for its branch, First Federal stated, "For the past six years there has been a steadily increasing demand for single family and multi-family mortgages in Lubbock."

As often written, the findings of the Savings and Loan Commissioner may not be arbitrary or capricious, but instead must have support in substantial evidence. Gerst v. Cain, 388 S.W.2d 168 (Tex.1965). The Commissioner's order is presumed to be valid and reasonably supported by substantial evidence, and the burden is appellants to show that the order was not supported by facts existing at the time of the entry of the order. Isbell v. Brown, 196 S.W.2d 691 (Tex.Civ.App.1946, writ ref'd).

From a review of the record as a whole, we are of the opinion that the judgment of the trial court is correct, and that the order of the Commissioner is supported by substantial evidence.

■ Appellants also insist by an appropriate point of error that the judgment of the court and the order of the Commissioner should be reversed because the hearing officer permitted appellees' expert witness to testify from hearsay sources. During appellees' direct examination of George W. Berry, its economist, appellants' counsel objected to Berry's testimony referring to a compilation of figures in his economic report. That compilation concerned bank debits for the City of Lubbock from the years 1964 through 1971, and was obtained from the *Texas Business Review,* a publication of the Bureau of Business Research at the University of Texas.

Appellants claimed the right to require appellees to present the "original source document" for examination by authority of Lewis v. Southmore Savings Association, 480 S.W.2d 180 (Tex.1972). The

hearing officer permitted Berry to testify concerning figures in the *Texas Business Review* provided that should appellants desire to examine the pertinent issues of that publication, appellees would be required to produce them. The hearing concluded without a demand from appellants upon appellee to examine the pertinent issues of the *Texas Business Review*.

The *Texas Business Review* is neither secret nor private, but instead is available to the general public upon a subscription basis. As such, we are doubtful that Lewis v. Southmore, *supra*, required appellees to present the pertinent issues of that publication for appellants' examination.

If, however, the hearing officer erred in admitting the evidence, we are convinced that the error was not such a denial of the rights of appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

The judgment is affirmed.

Affirmed.